13943

STATE (CITY OF CHARLESTON) v. MOSELEY

(177 S. E., 156)

*Mr. J. C. Long* for appellant,

*Messrs. J. Waties Waring and B. H. Mathews* for respondent,

November 13, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant Moseley, a resident of Charleston, was convicted in recorder's Court for the violation of Section 10 of the traffic ordinance of the city, which reads in part as follows: *"Driver's License*—Each person before driving a car must obtain a certificate from the police department, which certificate shall be dependent upon a knowledge of the ordinance relating to automobiles, filing with the police department such information as shall be required, and demonstration of skill in handling automobiles. The police department shall determine the eligibility of the applicant, which applicant shall not be under 16 years of age, and shall, if satisfied, issue to such applicant a certificate on presentation of which, together with a fee of one dollar ($1.00) to the city treasurer, the latter shall issue driver's license; said license so issued shall be good only during the year or portion of the year for which issued: And provided, further, that beginning with January 1, 1925, and each and every year thereafter, it shall be necessary to obtain a new license through the police department from the city treasurer. Said license may be suspended or withdrawn by the chief of police with the approval of the police commission. Provided that this section shall not apply to visiting vehicles of non-resi-

dents not used for hire and remaining continuously for a period of not more than 30 days, which publicly show evidence of the fact that their owners have complied with the law as to registration in their home county, or state."

On trial, while admitting that at the time of his apprehension he was driving an automobile within the city's limits without having obtained the operator's license required by the ordinance above quoted, the defendant set up as a defense that he had applied for and secured a State driver's license, which was in his possession at the time of his arrest; that this license, under the provisions of the statute, entitled him to drive an automobile on any of the highways, roads or streets of the State; and that the ordinance being in conflict with the State law was invalid. He was convicted by the recorder and sentenced to pay a fine of $10 or to serve five days. The verdict and judgment were sustained by the Court of General Sessions, and the case is now here on appeal.

The main question presented for our consideration is whether the ordinance is repugnant to the statute laws of the State providing for the issuance of driver's license for the operation of motor vehicles, and is, therefore, unconstitutional and void.

In *State v. Perry*, 138 S. C., 329, 136 S. E., 314, 316, the same ordinance was before us for construction. In disposing of the several questions there raised, the Court observed that the City of Charleston "has full general powers, under the provisions of its charter, for the enactment of such ordinances and the making of such regulations as may be necessary for the protection of the morals, health, and safety of the public," and that the ordinance in question is nothing more than a police regulatory measure and was not in conflict as contended, with the provisions of an Act relating to the fee to be paid to the State Highway Department for a motor vehicle license; the Act providing that such license

should be "in lieu of all other State, municipal, or county license."

It is to be noted that at the time of the decision in the *Perry case* there was no State law requiring the driver of a motor vehicle to obtain an operator's license, and making it unlawful for any person to drive such a vehicle without a license of that kind. Such a law was passed, however, in 1930 and is incorporated in the Code of 1932 as Chapter 128. Section 5985 provides: "Any person who is of sufficient age to drive a motor vehicle under the laws of this State may apply to the highway department for a driver's license and the said department, upon good cause being shown, may, in its discretion, issue to the applicant a license which shall entitle the applicant while having such license in his immediate possession to drive a motor vehicle upon the public highways, roads, and streets of this State."

It is contended by appellant that the provision, "streets of this State," as used in the statute, and as is commonly understood, means the thoroughfares of cities, towns and villages; and that the express language of the act, that a driver's license issued to an applicant by the highway department entitles the holder to operate a motor vehicle upon the streets of this State, can only mean that such person is given the right, and is qualified under the State law to do so. Even if we should concede so much to be true, we do not think that it necessarily follows that the General Assembly thereby intended to deprive cities and towns of the right to regulate traffic, especially in the matter of modern-day motor vehicle driving, within their own confines. It is a recognized fact that many operators of such vehicles, who may drive with some degree of safety in the open places, are unsafe as such drivers in congested centers. Hence, the operation of an automobile upon the crowded streets of municipalities requires, in the interest of public safety, the especial care and supervision of the local authorities.

As said in *State v. Perry, supra:* "A motor vehicle when improperly operated, or when operated by incompetent or irresponsible persons, becomes a source of grave danger to the public. And this is particularly true on the crowded streets of a city, where carefulness, skill, and clear thinking are required, especially in emergencies which often arise, to avoid accidents which may result in loss of life or destruction of property. The operation of motor vehicles under such conditions is a matter that demands careful supervision and control in the interest of public safety."

And in *McQuillin on Municipal Corporations,* § 948: "Obviously, crowded urban populations require numerous police regulations which would be unreasonable in rural districts or sparsely populated territory. This difference was early recognized, and from the first establishment of public corporations invested with civil government, the local community has been empowered to enact and enforce various kinds of such regulations which restrict, more or less, the liberty of the individual, his personal movements, and the use of his property. These are essential to the enjoyment of life in crowded centers. From the beginning their necessity has been sanctioned by the public authorities, and they have been sustained generally by the courts."

Furthermore, the statute, contrary to appellant's contention, does not, either expressly or by clear implication, forbid the determination by a city, as a police regulatory matter, of the eligibility and fitness of those desiring to operate such vehicles within its borders, and to license for that purpose only those who are found to be qualified to drive in crowded centers. If the Legislature had intended otherwise, it would no doubt have said so in plain language.

In view, therefore, of these conclusions, and of the broad powers given to the City of Charleston under its charter to make such rules and regulations respecting its streets as may appear to be necessary for the protection and safety

of the public, we are constrained to hold that the ordinance in question in no way conflicts with the State law providing for the issuance of driver's license, but is a reasonable and valid one.

Other questions raised by the exceptions have been examined and found to be without merit.

The judgment of the Circuit Court is affirmed.

Messrs. Justices Carter and Bonham and Mr. Acting Associate Justice C. T. Graydon concur.